## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TIFFANI JONES,<br>　　　　Plaintiff<br><br>　　　　v.<br><br>NVR INCORPORATION t/a RYAN HOMES,<br>　　　　Defendant | Civil Action No. 20-453 (CKK) |

## MEMORANDUM OPINION
(March 29, 2022)

Plaintiff Tiffani Jones brings this action against Defendant NVR Incorporation t/a Ryan Homes ("Defendant" or "NVR"), alleging that leaks in the plumbing system of a newly-constructed home she purchased from Defendant resulted in "structural damage" to the property and the growth of "toxic mold," which adversely affected the health of Plaintiff and her children.

Presently before the Court is Defendant NVR's [51] Motion for Summary Judgment. Upon review of the pleadings,[1] the relevant legal authority, and the record as a whole, for the reasons set

---

[1] The Court's consideration has focused on the following materials and the exhibits and affidavits attached thereto:

- Memorandum in Support of Defendant NVR, Inc.'s Motion *in Limine* to Exclude Testimony at Trial ("Def.'s Mot. *in Limine*"), ECF No. 50-2;
- Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s S.J. Mot."), ECF No. 51-17;
- Plaintiff's Opposition to Motion *in Limine* to Exclude Testimony ("Pl.'s Opp'n to Def.'s Mot. *in Limine*"), ECF No. 57;
- Reply in Support of Defendant NVR, Inc.'s Motion *in Limine* to Exclude Testimony ("Def.'s Motion *in Limine* Reply"), ECF No. 58;
- Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n to Def.'s S.J. Mot."), ECF No. 60 (including the associated exhibits filed at ECF No. 59);
- Supplemental Reply in Support of Defendant NVR, Inc.'s Motion *in Limine* to Exclude Testimony ("Def.'s Motion *in Limine* Suppl. Reply"), ECF No. 62;
- Defendant NVR, Inc.'s Objection and Motion to Strike Affidavits and Exhibits Submitted in Support of Plaintiff's Opposition to Motion for Summary Judgement ("Def.'s Mot. to Strike"), ECF No. 63;
- Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s S.J. Reply"), ECF No. 64;
- Plaintiff's Memorandum in Opposition to Defendant's Objection and Motion to Strike ("Pl.'s Opp'n to Def.'s Mot. to Strike"), ECF No. 65-2; and
- Reply Memorandum in Support of Defendant NVR, Inc.'s Objection to and Motion to Strike ("Def.'s Mot. to Strike Reply"), ECF No. 66.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

forth below, the Court concludes that NVR has demonstrated there is no genuine dispute as to any material fact and NVR is entitled to judgment as a matter of law as to Plaintiff's remaining claims for breach of contract, breach of express warranty, and strict liability.  Accordingly, the Court shall **GRANT** Defendant's Motion for Summary Judgment and shall dismiss this case.

## I.   BACKGROUND

### A.  Procedural Background

Plaintiff filed her Complaint in the District of Columbia Superior Court on January 28, 2020.  *See* Compl., ECF No. 1-1.  In summary terms, Plaintiff's Complaint alleges that she discovered a water leak in a newly constructed home she purchased from NVR in 2016.  *See id.* ¶¶ 5, 6.  She claims that she reported the leaks, and allowed NVR access to her home to make repairs, but that plumbing issues persisted over several years.  *Id.* ¶ 6.  She alleges that inspections in October and November 2019 revealed toxic mold and structural defects in the house.  *Id.* ¶ 7. Plaintiff claims that the "toxic mold" led to medical issues for her and her family members and reduced the value of the property.  *Id.*

After removing the case to this Court, NVR moved to dismiss Plaintiff's eight-count Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court granted in part Defendant's motion and dismissed the following counts: fraud (Count 2); negligence (Count 3); negligent misrepresentation (Count 4);  breach of implied warranty of merchantability (Count 6); and violation of D.C. Consumer Protection Procedures Act, D.C. Code .C. Code § 28-3904 (Count 7).[2]  The Court denied the remainder of Defendant's motion to dismiss.  Accordingly, only three counts remain pending: breach of contract (Count 1); breach of express warranty (Count 5); and strict liability (Count 8).

---

[2] The Court dismissed Counts 2, 3, 4, and 7 without prejudice.  *See* Order, ECF No. 20.  However, Plaintiff never sought the Court's leave to amend the Complaint.

The parties then proceeded with discovery.  Pursuant to the [31] Scheduling and Procedures Order issued by the Court, the parties were required to complete their Rule 26(a)(2)(B) & (C) expert disclosures by September 30, 2020; with opposing disclosures due by no later than November 30, 2020 and replies due by December 11, 2020.  The Court also ordered that "[a]ll discovery shall be completed . . . on or before FEBRUARY 26, 2021."  Sched. & Procedures Order, ECF No. 31.  As detailed by the Court in its contemporaneous [69] Memorandum Opinion, Plaintiff failed to disclose any expert witnesses to support her claims by the Court-ordered deadlines.  *See* Mem. Op. at 5–7.  The Court shall not recount its extensive discussion of Plaintiff's deficient disclosures here, but instead reincorporates the discussion contained in its [69] Memorandum Opinion.

NVR filed a Motion *in Limine* and Motion for Summary Judgment.  Despite Plaintiff's failure to comply with the Court-ordered deadlines for expert disclosures, or to supplement her disclosures in accordance with Rule 26(e) by the deadline for the close of discovery, Plaintiff's Opposition to Defendant's Motion for Summary Judgment relies extensively on testimony and records prepared by "expert" or otherwise "retained" individuals or entities,  *see* Mem. Op. at 9–14.  NVR then moved to strike certain exhibits and affidavits submitted with Plaintiff's Opposition.  *See* Def.'s Mot. to Strike.

The Court ordered that Plaintiff could not rely on these materials due to her violation of Rules 26(a) and 26(e) and her failure to demonstrate that such violation was "substantially justified" or "harmless."  *See* Mem. Op. at 17–20.  The Court also struck certain expert-related exhibits and affidavits submitted by Plaintiff in support of her Opposition. *See id.* at 20–22; Order, ECF No. 68.

B. **Factual Background**

In presenting the facts pertinent to resolving the present motion, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). In most instances the Court shall cite to [51-3] Defendant's Statement of Material Undisputed Facts ("Def.'s Stmt.") unless Plaintiff disputes or controverts relevant aspects of a fact proffered by Defendant. In such instances, the Court shall also cite to [59-3] Plaintiff's Counter-Statement of Disputed Material Facts ("Pl.'s Counter-Stmt."). The Court shall also cite directly to the record, where appropriate, to provide additional information not covered by Defendant's Statement.

However, the Court shall *not* consider Plaintiff's exhibits and affidavits (or portions thereof) that have been stricken from the record pursuant to its [68] Order and [69] Memorandum Opinion. The Court may note where Plaintiff has relied only on evidence that has been stricken from the record in assessing whether or not she has controverted evidence provided by Defendant.

1. **Purchase Agreement and Limited Warranty**

Pursuant to a Purchase Agreement dated February 29, 2016, Defendant agreed to construct a home for Plaintiff at 1001 Tanner Place SE in Washington, D.C. (the "Property"). Def.'s Stmt. ¶ 2. In executing the Purchase Agreement, Plaintiff agreed that she had been given the opportunity to review the [Limited Warranty]," that she had "received a copy" of the Limited Warranty, and agreed that:

> THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF FREEDOM FROM STRUCTURAL DEFECTS, WORKMANSHIP AND HABITABILITY, ALL OF WHICH [PLAINITFF] HEREBY WAIVES. OTHER THAN AS

> PROVIDED IN THE LIMITED WARRANTY, PURCHASER IS
> PURCHASING "AS IS" AND "WHERE IS."

Def.'s Stmt. ¶ 3; Purchase Agreement ¶ 6, ECF No. 51-5. The Limited Warranty provides, in

pertinent part:

> **3. ONE YEAR LIMITED WARRANTY ON THE BASIC
> HOME.** Builder warrants that the Home and driveway, walkways,
> steps, patios, porches, fences (if any) and decks (if any) supplied by
> Builder with the Home under the same purchase agreement will be
> free from defects in materials and workmanship of the original
> construction for a period of one (1) year from the Warranty Date.
>
> **4. TWO YEAR LIMITED WARRANTY MECHANICAL
> SYSTEMS.** Builder warrants that the installation of the plumbing,[3]
> electrical, and HVAC systems will be free from defects in
> workmanship of the original installation which appear at any time
> within two (2) years after the Warranty Date.
>
> **5. TEN YEAR LIMITED WARRANTY AGAINST MAJOR
> STRUCTURAL DEFECTS.** Builder warrants that the Home will
> be free from major structural defects[4] in the materials or
> workmanship of the original construction which appear any time
> within ten (10) years after the Warranty Date, and which
> significantly affect the load-bearing functions of the Home or
> otherwise render it unsuitable for residential purposes.

Def.'s Stmt. ¶ 8. It further specifies that, upon occurrence of a "defect" under one of these sections,

the purchaser must "give prompt and written notice" to NVR, which then obligates NVR to "repair,

replace, or pay the reasonable costs of repairing or replacing the defective component. *Id.* NVR

has the "right to decide in its own discretion which of those remedies it will provide," and "[t]he

repair, replacement, or payment remedy selected . . . will be the exclusive remedy for which [NVR]

will be liable with respect to the pertinent defect." *Id.*

---

[3] "Plumbing Systems" is defined as "Water supply, waste, and vent pipes and their fittings." *See* Ryan Homeowner's Manual at 56, ECF No. 51-6.

[4] "Structural Defect" is defined as "any defect in the load-bearing portions of a new home that adversely affects its load-bearing function to the extent that the home becomes or is in serious danger of becoming unsafe, unsanitary, or otherwise uninhabitable." *See* Ryan Homeowner's Manual at 56, ECF No. 51-6.

In addition to these Limited Warranty provisions, the Purchase Agreement provides that "ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS [PURCHASE] AGREEMENT . . . REGARDLESS OF LEGAL THEORY, EXCEPT ANY CLAIMS UNDER THE LIMITED WARRANTY" shall be "SUBJECT TO A ONE (1) YEAR LIMITATION OF ACTION PERIOD AND BAR DATE."  Def.'s Stmt. ¶ 4; Purchase Agreement ¶ 13.  That same provision specifies that the "so-called 'discovery rule' is mutually waived by the parties."  *Id.*

Plaintiff was represented by a real estate broker in completing the purchase of the Property. Def.'s Stmt. ¶ 9.  Plaintiff agrees that she reviewed the Purchase Agreement with her real estate broker before signing it.  *Id.* ¶ 10. Plaintiff settled on the purchase of the Property on October 28, 2016.  *Id*. ¶ 12.

### 2.  Plaintiff's Reports of Leaks to NVR and NVR's Response

In February 2017, Plaintiff noticed that an area of the Property's living room ceiling below the master bathroom was "bubbling."  Pl.'s Ex. 10, Deposition of Tiffani Jones ("Pl.'s Dep.") 23:9–24:10, ECF No. 59-7.  Plaintiff reported to NVR that the shower in the master bathroom was leaking.  Def.'s Stmt. ¶ 13.  NVR indicates that the leak was due to "faulty grouting at the seat in the master bathroom shower," which it repaired as of April 17, 2017.  Def.'s Stmt. ¶ 13.  Plaintiff does not dispute that the cause of the water escaping to the living room ceiling was "faulty grouting" in the master bathroom.  Pl.'s Counter-Stmt. ¶ 13.  However, she claims that NVR did not complete its repair of the leak in April 2017; she contends that the leaks remained "ongoing." *Id.*  In support of this claim, she cites her own deposition testimony, as well as her husband's affidavit, in which he attested that there "was never a full 1-year period that we didn't experience a leak in the home."  Pl.'s Ex. TJ33, Affidavit of Anthony Kundera ("Kundera Aff.") p. 2 ¶ 3, ECF No. 59-22.   She also cites periodic communications between herself and Defendant's

representatives, including service requests, text messages and emails dated September 10, 2017, September 8 and November 13, 2018, and February 4, 2019 in which she reported that the shower was leaking.  *See* Pl.'s Ex. TJ16, Service Call Receipt (9/20/2017), ECF No. 59-10; Pl.'s Ex. TJ17, 9/8/2018, 11/13/2018 Text Messages, ECF No. 59-11; Pl.'s Ex. TJ18, 4/19 Text Message, ECF No. 59-12.  Although these communications may demonstrate either a continuous or recurring problem, Plaintiff has not offered any evidence in support of her claim that each report and/or each "leak" was attributable to the same cause.

More than one year later, in July 2018, Plaintiff again reported to Defendant a water leak which occurred "when the master bath shower was used."  Def.'s Stmt. ¶ 14.  Plaintiff does not dispute that she reported a "leak" to NVR in July 2018; she disputes only NVR's characterization of this issue as "new," claiming that the same leak she previously reported in 2017 had been "ongoing."  Pl.'s Counter-Stmt. ¶ 14.  In support of this claim, Plaintiff relies again on her own deposition testimony and Mr. Kundera's affidavit that leaks were "ongoing," as well as communications with NVR and its third-party contractor dated in *2019*. *Id.*  But again, other than her allegation that the issue was not "new," she provides no evidence in support of her claim that this issue in 2018 had the same cause as the issue she reported in 2017 (or any later issue in 2019).

NVR indicates that, after Plaintiff's report in July 2018, it "immediately hired Sunshine Cleaning & Restoration" to perform "restoration and drying service[s]," which Plaintiff does not dispute.  Def.'s Stmt. ¶ 14.  NVR next describes the steps it took to "locate the source" of the leak. *See id.* ¶ 15, relying upon an affidavit submitted by its Warranty Manager, Daniel Bichner, who was "the point of contact with [Plaintiff] regarding her concerns and complaints regarding the leaks in her master bathroom shower."  Def.'s S.J. Mot. Ex. 1, Affidavit of Daniel Bichner ("Bichner Aff.") ¶ 4, ECF No. 51-4.  NVR "caused the shower enclosure to be removed and

reinstalled," but determine that that area was not the source of the leak. Def.'s Stmt. ¶ 15; Bichner Aff. ¶ 11. Next, NVR made "small openings in [the] wall board behind the shower supply valve and under the shower," and "removed a portion of the tile at the bathtub, to expose the plumbing systems[.]" Def.'s Stmt. ¶ 15; Bichner Aff. ¶ 11. Defendant states that it tested the "water supply, waste, and vent pipes and their fittings servicing the master bath shower and tub," and concluded there "was no leak" in the "plumbing system." Def.'s Stmt. ¶ 15; *see also* Bichner Aff. ¶ 11 ("It was determined that there was no leak in the plumbing system.").

Plaintiff does not offer any evidence to controvert Mr. Bichner's averments under oath that NVR "tested" the "plumbing system" following her report in 2018 and did not find a leak. Def.'s Stmt. ¶ 15; *see also* Bichner Aff. ¶ 11. She relies on two estimates for repairs prepared by "retained" "independent plumbers" and "retained" "independent contractors" in *2019* and *2020*. Pl.'s Counter-Stmt. ¶ 15; *see* Pls.' Ex. TJ13, Estimate Prepared by Karma Home Designs LLC, dated 11/6/2019 ("Karma Home Designs Estimate"), ECF No. 59-23; Pl.'s Ex. TJ19, Estimate Prepared by Michael & Son Services, dated 5/18/2020 ("Michael & Son Estimate"), ECF No. 59-13. For the reasons set forth in the Court's [69] Memorandum Opinion, these repair proposals have been stricken from the record. *See* Mem. Op. at 20–22. And, in any event, these repair estimates do *not* identify the source or cause of any "leak" in the Property's "plumbing system." *See id.* at 14–15. Accordingly, NVR's evidence that it tested the "plumbing system" "servicing the master bathroom" and confirmed that there "was no leak" in 2018 is uncontroverted.

In early 2019, Plaintiff notified Mr. Bichner by text message that water was "leaking through [the] ceiling and around [the] shower now. It wasn't leaking around [the] shower before." Pl.'s Ex. TJ18, 2/4/19 Text Message, ECF No. 59-12. It is not clear from the record what the status of this "leak" was for several months. But, in October 2019, NVR again attempted to identify the

source of this "leak."  *See* Def.'s Stmt. ¶ 16; *see also* Bichner Aff. ¶ 12.  At that point, NVR removed some of the tile at the base of the shower pan and the shower pan to determine if water was escaping from or along the edge of the shower pan.  Def.'s  Stmt. ¶ 15.; Bichner Aff. ¶ 13. Plaintiff does not recall the date on which the shower pan was removed, but does not otherwise dispute this fact.  Pl.'s Counter-Stmt. ¶ 15.

NVR states that when it removed the tile and tile backer, it "observed that a small section of wood behind the tile backer on the tub wall was water stained from the earlier leak" and "two pieces of wood blocking at the base of the shower appeared to have a small amount of what [Plaintiff] suspected was mold."  Def.'s Stmt. ¶ 17.  Plaintiff states that Defendant actually "found mold" on the wooden planks and the bathroom door.  Pl.'s Counter-Stmt. ¶ 17.  As to her claim that mold was found on the "bathroom door," Plaintiff cites only her deposition testimony.  *See id.* (citing Pl.'s Dep. 46:17–22, 49:10–11).  But *none* of these portions of her deposition transcript support her assertion that "mold" was discovered on the bathroom door.  However, it appears to be undisputed that there was at least a small amount of mold on the wooded material behind the "tile backer" on the "tub wall."

NVR again hired Sunshine Cleaning and Restoration to remediate the "suspected mold." Def.'s Stmt. ¶ 18; Bichner Aff. ¶ 14.  The remediation was scheduled to occur on October 25, 2019, but Defendant indicates that Plaintiff "was not home or otherwise did not provide entry to the house on that date."  Def.'s Stmt. ¶ 18.  According to Defendant, however, the "remediation work was performed on October 30, 2019."  *Id.*

Plaintiff does not dispute that she was not home on October 25, 2019; but she claims that the "remediation was not completed" on October 30, 2019.  Pl.'s Counter-Stmt. ¶ 18.  However, in support of this point, Plaintiff cites an inspection that was purportedly conducted by Kenn

Broughton on *October 29, 2019*—a day *before* Sunshine Cleaning and Restoration's remediation services were performed.  *See* Pl.'s Counter-Stmt. ¶ 18.[5]  Plaintiff also claims that an unidentified employee of Sunshine Cleaning and Restoration told her and Mr. Kundera that there was "black mold" present in the master bathroom.  Kundera Aff. ¶ 11.

NVR hired Ox Pond Industries to perform "antimicrobial environmental testing" of Plaintiff's home for the presence of mold.  Def.'s Stmt. ¶ 19.  Francis W. McGrail, IV, a Senior Industrial Hygienist with 30 years of experience "providing consulting services to include Indoor Air Quality evaluations, microbial testing and assessment with a focus on adverse health effects[,]" performed a "site evaluation" of Plaintiff's Property on December 17, 2019.  Def.'s S.J. Mot. Ex. 3, Affidavit of  Francis W. McGrail, IV ("McGrail Aff.") ¶¶ 1, 7, ECF No. 51-12.  Mr. McGrail indicated that he observed "staining on the gypsum drywall ceiling in the living room below the master bathroom," but that he observed "[n]o visible fungal growth."  *Id.* ¶ 19.  He also observed "[s]taining on wooden surfaces in the master bathroom," but opined based on his "education, training, background and professional experience," that this "type of staining is the result of the metabolic processes that occur during fungal amplification and does not represent a significant health risk."  *Id.* ¶ 21.  Mr. McGrail further attested that:

> [I]ndoor fungal spore concentrations were consistent with or below those measured outdoors, and the organisms identified indoors were generally reflected in the outdoor fungal ecology. The concentrations of organisms identified indoors that were not present outdoors unremarkable . . .
>
> The results of the sampling were consistent with the site observations and indicate the absence of ongoing selective amplification of fungi indoors.

---

[5] Plaintiff cites Mr. Broughton's affidavit, as well as "reports" prepared by Dr. Joe Spurgeon and SEEML Labs. However, these materials are all based on the *same inspection* conducted by Mr. Broughton on October 29, 2019.  *See* Mem. Op. at 9–10.  And, for the reasons in the Court's [69] Memorandum Opinion, these materials have all been stricken from the record.

*Id.* ¶¶ 37–38.  Mr. McGrail recommended that certain items of wood and drywall be dried and/or replaced.  *See* McGrail Report, ECF No. 51-12.  Defendant attempted to obtain Plaintiff's authorization to complete these recommended repairs.  Bichner Aff. ¶¶ 17–18.  Plaintiff stated during her deposition that she did *not* authorize Defendant to make the repairs recommended by Mr. McGrail.  *See* Pl.'s Counter-Stmt. ¶ 22; Pl.'s Dep. 64:1–9.

Plaintiff hired Mr. Ken Broughton to conduct an "inspection" of suspected mold, which was completed on October 29, 2019 (as indicated above, this was *before* Sunshine Cleaning and Restoration performed remediation on October 30, 2019).  Mr. Broughton reportedly conducted a "visual assessment" of the mold and collected a sample, which was sent to SEEML Labs for testing.  *See* Pl.'s Ex. TJ1,  Unbiased Mold Inspection & Testing at Jones – 346, ECF No. 59-4.  Mr. Broughton concluded based on his inspection that there was a "toxic" level of "Chaetomium" measured in the "Bathroom Air Sample."  *Id.*  As noted in the  Court's [69] Memorandum Opinion, Plaintiff *cannot* rely on this evidence in her Opposition because she failed to disclose Mr. Broughton as an expert witness and otherwise comply with the requirements provided in Rule 26(a)(2) by the Court-ordered deadline of September 30, 2020.  *See* Mem. Op. at 9–11, 17–20.  The Court struck Mr. Broughton's report of his inspection, affidavit, resume, and expert report from the docket.  *See id*. at 20–22.  The Court also struck the purported "expert" reports derived from Mr. Broughton's inspection.  *See id.*  Plaintiff, therefore, has not rebutted Defendant's expert testimony that there was neither "toxic" nor a high concentration of mold at the Property.

Defendant also indicates that there is "no evidence of compromised wood components or structural damage or defect resulting from the minor water leak."  Def.'s Stmt. ¶ 27.  In support of this conclusion, Defendant offers testimony by Mr. Bichner, who attests that "to a reasonable degree of certainty under accepted construction industry means and methods," there is "no

evidence in [Plaintiff's] house of any defect in the load-bearing portions of [Plaintiff's] home that adversely affect its load-bearing function or that is in serious danger of becoming unsafe, unsanitary, or otherwise uninhabitable[.]"  Bichner Aff. ¶ 22.

NVR has also submitted a declaration by Allan E. Burt, who attests that he worked as "as a Plumber-Pipefitter for ten years and was licensed as a Journeyman Plumber and Gasfitter in Maryland," and served since 2004 as a consultant "engaged for building assessments, mold, mold sampling and moisture intrusion investigations, including root cause(s) determinations,  damage assessment, remediation recommendations and post remediation verification sampling in all types of structures both commercial, single family or multi-family residential and hospitality." Def.'s S.J. Mot. Ex. 5, Affidavit of Allan E. Burt ("Burt Aff.") ¶¶ 2–3, ECF No. 51-14.  Mr. Burt attests, based on a walk through inspection of the Property in 2020: "There was no evidence of any compromised structural wood components exposed in the second-floor bathroom or on the wood floor joists or subfloor visible from the access hole in the living room ceiling." *Id.* ¶ 10.

Plaintiff disputes the assessments of Defendant's experts in her summary judgment briefing.  But she has been precluded from relying on untimely disclosed "expert" testimony to contradict these conclusions.  Although Plaintiff cites the testimony of Mr. Kundera in his previously undisclosed capacity as a "certified home inspector," that testimony has been excluded and struck from the record.  *See* Pl.'s Counter-Stmt. ¶ 27; Mem. Op. at 20–22.  Plaintiff also relies upon estimates prepared by "retained" "[i]ndependent plumbers" Michael & Son Services and "retained" "[i]ndependent contractors" Karma Home Design, contending that the fact that these entities identified certain repairs that needed to be made demonstrates that the Property's plumbing system was defective and/or that the Property had suffered "structural damage."  Pl.'s Counter-Stmt. ¶ 27.  Besides the fact that *neither* estimate supports such conclusions, Plaintiff has been

precluded from relying on these "estimates" as if they were reports prepared by "retained" experts—as she attempts to do—based on her failure to comply with Rule 26(a)(2). *See* Mem. Op. at 13–14, 17–20. Accordingly, Plaintiff has offered no evidence to rebut NVR's evidence that there was no "compromised wood components" or "structural damage or defect" resulting from any water leak.

Finally, Plaintiff alleges that she suffered various health consequences as a result of her exposure to mold, including difficulties during a pregnancy with twins. *See, e.g.*, Def.'s Stmt. ¶ 33. However, Plaintiff does not dispute that she was *never* tested for mold allergies, and she received no diagnosis or treatment relating to any alleged mold exposure. *See id.*; Pl.'s Dep. 72:6–12 ("Q: What sort of testing did you have done to determine the cause of these symptoms? A: I didn't have any testing done to determine the cause. I just – I've been pregnant before and I hadn't experienced these symptoms."). Plaintiff supplies no evidence from any treating physician or other medical expert supporting *any* connection between the symptoms she claims to have experienced and mold exposure. She indicates only that she "has retained a medical doctor who will testify to the causal relationship between her mold exposure and her symptoms." Pl.'s Counter-Stmt. ¶¶ 31, 33. For the reasons set forth in the Court's [69] Memorandum Opinion, Plaintiff has been precluded from offering any medical expert testimony based on her failure to comply with Rules 26(a) and (e) and the Court's deadlines in this case. *See* Mem. Op. at 11, 17–20.

Similarly, citing Plaintiff's own deposition testimony, NVR notes that Plaintiff "did not have her children tested for mold allergies." Def.'s Stmt. ¶ 32. Plaintiff does *not* dispute that she never had her children tested for mold allergies; she indicates only that "[m]edical records . . . identify the source of their symptoms as exposure to mold." Pl.'s Counter-Stmt. ¶ 32. These medical records indicate only that each child had "mold suspected exposure." *See* Pl.'s Ex. TJ20,

at Jones –113, ECF No. 59-14; Pl.'s Ex. TJ21, at Jones –117, ECF No. 59-15.  She did not timely designate any treating physician or other medical expert to testify regarding her children's purported symptoms, treatments, diagnosis, or any other topic related to their medical conditions. And she has been precluded from doing so in support of her Opposition.  *See* Mem. Op. at 17–22.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III.  DISCUSSION

Before proceeding with its discussion, the Court observes that Plaintiff's Opposition to Defendant's Motion for Summary Judgement consists, in large part, of a repetitive recitation of the reasons Plaintiff "denies" that summary judgment should be entered in Defendant's favor and the "facts" she contends support her remaining claims. Her discussion is largely devoid of legal analysis, discussion of the evidence upon which she relies, or any effort to demonstrate that the "factual disputes" to which she refers are "genuine" or "material." And, Plaintiff often cites evidence that has since been stricken from the record, *see* Order, ECF No. 68, or that does not support the proposition for which she cites it. The Court identifies these deficiencies at the outset of its analysis because "summary judgment is appropriate if the nonmoving party fails to make a

15

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. To survive summary judgment, "[t]he nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Law Offices of Arman Dabiri & Assocs. P.L.L.C. v. Agric. Bank of Sudan*, Civil Action No. 17-2497 (RDM), 2021 WL 918080, at *3 (D.D.C. Mar. 9, 2021) (citing Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324).

The Court has carefully scrutinized the pleadings and the entire record in this case to determine whether any genuine disputes of material fact remain. Having done so, the Court concludes that summary judgment in NVR's favor is appropriate.

## A. Plaintiff Has Failed to Show a Genuine Dispute of Material Fact as to the "Causation" Element of any Remaining Claims.

Each of Plaintiff's three remaining claims require her to prove that an alleged plumbing defect and/or mold *caused* the injuries she alleges. To prove a breach of contract or breach of an express warranty, a plaintiff must demonstrate "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) *damages caused by the breach*." *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000,1005 (D.C. 2013) (emphasis added) (breach of express warranty); *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (breach of contract). To succeed on a strict liability claim, a plaintiff must prove: "(1) the seller was engaged in the business of selling the product that caused the harm; (2) the product was

16

sold in a defective condition unreasonably dangerous to the consumer or use; (3) the product was one which the seller expected to and did reach the plaintiff consumer or user without any substantial change from the condition in which it was sold; and (4*) the defect was a direct and proximate cause of the plaintiff's injuries.*"  *Warner Fruehauf Trailer Co., Inc. v. Boston*, 654 A.2d 1272, 1274 (D.C. 1995) (emphasis added).[6]

NVR contends that Plaintiff cannot prove the causation element of any of her remaining claims without expert testimony—specifically, expert testimony is required to show that there *was* a defect in the Property's plumbing system and that the defect *caused* the "structural damage" and that the alleged "toxic mold" *caused* the alleged health problems experienced by Plaintiff and her children.  *See* Def.'s S.J. Mot. at 9–14; Def.'s Mot. *in Limine* at 7–12.  "[E]xpert testimony is required whenever the subject matter is 'so distinctly related to some science, profession or occupation as to be beyond the ken of a layperson.'"  *Davis v. Bud & Papa, Inc.*, 885 F. Supp. 2d 85, 88–89 (D.D.C. 2012) (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C. 1991)).  Simply put, "expert testimony is required when the subject matter is too technical for the lay juror."  *Id.* (internal quotation marks omitted) (quoting *Dist. of Columbia v. Hampton*, 666 A.2d 30, 36 (D.C. 2006)).  The decision whether to require expert testimony is "confided to the sound discretion of the district court."  *Id.* (quoting *Varner v. Dist. of Columbia*, 891 A.2d 260, 266 (D.C. 2006)).

The Court agrees with NVR that expert testimony is required to prove the "causation" element of each of Plaintiff's remaining claims.  Whether there *was* a construction or design defect; whether any such defect caused "structural damage"; whether any such defect caused "toxic

---

[6] Under D.C. Law, real estate is a "product" for strict liability purposes. *See Berman v. Watergate W., Inc.*, 391 A.2d 1351, 1357 (D.C. 1978) ("For it is by now widely accepted that the law of products liability applies . . . to the sale of newly constructed homes.").

mold"; and whether any "mold" led to the health effects for Plaintiff and her children is beyond the "common knowledge" and "every day" experience of a lay person.  Rather, these issues require expert testimony because the subject matter is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson."  *Davis*, 885 F. Supp. 2d at 88.

As detailed in its [69] Memorandum Opinion, Plaintiff has been precluded from relying on expert testimony based on her failure to comply with Court-ordered deadlines and her obligations under Federal Rule of Civil Procedure 26(a)(2) and (e), and the Court has struck her expert-related materials from the record.  Mem. Op. at 17–22.  As a result, Plaintiff has no experts upon which she can rely in opposing Defendant's summary judgment motion.   Absent any expert testimony, Plaintiff has failed to offer evidence showing that the "leaks" she reported resulted from any defect in the Property's design or plumbing system, or that any defect *caused* the injuries she claims. Therefore, she has failed to establish the existence of an "element essential" to her claims and "on which [she] will bear the burden of proof at trial."  *Celotex Corp*, 477 U.S. at 322.  As such, there is no "genuine issue as to any material fact," since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  Summary judgment in Defendant's favor is appropriate.

### 1. Plaintiff Has Offered No Evidence to Prove that a "Design Defect" Caused "Structural Damage."

Plaintiff has failed to offer evidence sufficient to create a genuine dispute of material fact that any leak in her master bathroom was caused by a "design defect" in the Property, or that any purported defect *caused* "structural damage" to the Property, as she alleges in her Complaint and Opposition.  *See* Compl. ¶¶ 8, 12; Pl.'s Opp'n to Def.'s S.J. Mot. at 6 ("An inspection performed by a private contractor . . . revealed structural defects.").  Assessing whether the Property sustained any "structural damage" requires specialized knowledge in engineering and construction.  Plaintiff

18

has been precluded from offering expert testimony, for the reasons set forth in the Court's [69] Memorandum Opinion.

In her Opposition, Plaintiff cites the estimates for repairs prepared by Karma Home Design and Michael & Son Services as evidence that "retained" "independent contractors" and "independent plumbers" "confirmed" structural damage in the property, resulting from a "design defect." Pl.'s Counter-Stmt. 27; *see also* Pl.'s Opp'n to Def.'s S.J. Mot. at 6 (referring to inspection performed on November 6, 2019 by Karma Home Design as revealing "structural defects"). Plaintiff characterizes both estimates as inspections or reports prepared by "retained" independent plumbers or contractors—in other words, she attempts to rely on both estimates as providing expert knowledge, *without* having disclosed anyone affiliated with either company as an expert witness. *See* Mem. Op. at 13–14.  For the reasons set forth in the Court's previous Memorandum Opinion, she is precluded from doing so.

Even if Plaintiff *could* rely on these repair estimates prepared by Michael & Son Services or Karma Home Design, *neither* repair estimate stands for the sweeping propositions that the Property had a "defective plumbing system" or that any purported defect caused "structural damage" to the Property—as Plaintiff claims. *See, e.g.*, Pl.'s Opp'n to Def.'s S.J. Mot. at 12–13 (citing Karma Home Design estimate as showing "design defects and the corrections needed to the Home"); *id.* at 13 (referring to the Michael & Son estimate as showing a "dysfunctional plumbing system"); Pl.'s Counter-Stmt. ¶ 27 (citing repair estimates in support of claim that the "water leak . . . caused structural damage to the home.").  Each estimate merely lists a number of proposed services and the proposed cost to repair them.  *Neither* reaches any conclusion as to whether there is a "design defect" in the Property or its plumbing system, or whether any defect caused "structural damage," as Plaintiff contends.  *See* Pl.'s Opp'n to Def.'s S.J. Mot. at 6, 10, 13, 15.

Plaintiff also submits the Affidavit of Mr. Kundera, which includes photographs supposedly evidencing "structural damage" to portions of the House.  *See* Kundera Aff. at pp. 11–12.  Plaintiff has been precluded from relying on any "expert testimony" offered by Mr. Kundera based on her failure to comply with Rule 26.  *See* Mem. Op. at 21–22; *see also Window Specialists, Inc. v. Forney Enters., Inc.*, 47 F. Supp. 3d 53, 59 (D.D.C. 2014) (excluding fact witness form rendering expert testimony).

The only remaining evidence upon which Plaintiff relies in support of her claim that the water leak caused "structural damage" to her home is her own deposition testimony and photographs.  *See* Pl.'s Counter-Stmt. ¶ 27 (citing Pl.'s Dep. 46:17–22, 49:10–11).  Neither cited portion of Plaintiff's deposition testimony actually addresses "structural damage."  Even if it did, such testimony would require specialized knowledge about which Plaintiff could not testify as a lay person.  *See* Fed. R. Evid. 701; *see* Pl.'s Dep. 21:5–12 (testifying that Plaintiff had no formal or informal education or training in "construction methods").

Absent any expert opinion supporting Plaintiff's theory that a "design defect" in the plumbing system *caused* "structural damage" to the Property, Plaintiff has failed to demonstrate that there is any dispute of material fact that any "defect" led to the water leak, which in turn, *caused* the damage of which she complains.

### 2.   Plaintiff Has Offered No Evidence to Prove that Water Leak or Mold *Caused* Health Problems for Her or Her Children.

Plaintiff also claims that the water leak and resulting growth of "toxic mold" caused health issues for her and her family members.  *See, e.g.*, Pl.'s Opp'n to Def.'s S.J. Mot. at 21.  Although "expert testimony is not required to demonstrate that a leak may cause mold," *Am. Nat'l Red Cross v. Vinton Roofing Co., Inc.*, 697 F. Supp. 2d 71, 73 (D.D.C. 2010), it is required to demonstrate whether or not the mold was "toxic" and whether the mold *caused* the health problems Plaintiff

claims she and her family suffered.  *See Young v. Burton*, 354 F. App'x 432, 433 (D.C. Cir. 2009).

Absent any expert testimony, Plaintiff has not (and cannot) show a genuine dispute of material fact

as to whether the mold was actually "toxic" and that this supposedly "toxic" mold *caused* the

health problems she claims.  Proving both points requires scientific knowledge beyond the

knowledge of layperson.  *See id.* (concluding that expert testimony was required to demonstrate

"link between a potentially toxic building environment and symptoms experienced by tenants").

As a threshold matter, Plaintiff has not offered sufficient evidence to show a genuine

dispute of material fact that the mold discovered in the Property was "toxic."  Such a conclusion

requires specialized scientific knowledge beyond the knowledge of a lay person.  Defendant has

produced a report prepared by Mr. McGrail, who concluded that there was no "toxic" mold present

at the Property.  Def.'s Stmt. ¶ 20; *see* McGrail Aff. ¶¶ 21, 37–38.

Plaintiff relies on an inspection report prepared by Mr. Ken Broughton from an inspection

dated October 29, 2019—*before* NVR's third-party contractor was able to access the Property to

remediate the mold.  *See supra* Section I(B)(2).  The Court has precluded Plaintiff from relying on

Mr. Broughton as an expert and has stricken this inspection report, his affidavit, his "expert report,"

and a report of "lab results" from the record based on Plaintiff's failure to timely disclose him as

an expert and otherwise comply with the requirements of Rule 26(a)(2).  *See* Mem. Op. at 9–11,

17–22.  The Court also precluded Plaintiff from relying on the report prepared by Dr. Joe

Spurgeon, in which Dr. Spurgeon reviewed Mr. Broughton's inspection findings, because Plaintiff

also failed to disclose him or provide an associated written report in accordance with Rule 26(a)(2).

*See id.*  Plaintiff also attempts to rely on a "remediation proposal" prepared by Boston

Environmental & Contracting, Inc. to demonstrate that there was "toxic" mold, but has been

precluded from doing so for the same reasons she cannot rely on other "estimates" prepared by

third parties—she failed to identify anyone affiliated with that company as an expert witness, and so now cannot rely on that estimate as if it contains expert knowledge.  And, again, that document merely provides proposed services to address the mold in the home, but says nothing of whether or not the mold is "toxic."  *See* Pl.'s Ex. TJ15, Boston Environmental & Contracting Mold Remediation Proposal, ECF No. 59-9.  Absent such expert testimony, Plaintiff has failed to controvert Defendant's evidence that there was no "toxic" mold at the Property.  She is left only with the assertions in Mr. Kundera's affidavit that an unidentified employee of NVR's mold remediation contractor told him there was "black mold" in the shower.  Kundera Aff. ¶ 11.  Plaintiff plainly relies on this assertion to prove the truth of the matter asserted, and therefore it is  "'sheer hearsay" which "counts for nothing' on summary judgment."  *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)).  In sum, Plaintiff has failed to offer *any* admissible evidence that the mold discovered was "toxic."

Expert testimony is also required to demonstrate that "toxic" mold *caused* the health issues Plaintiff alleges.  *See, e.g.*, *Young v. Burton*, Civil Action No. 07-0983, 2008 WL 4144478, at *1 (D.D.C. 2008) (granting motion for summary judgment where opposing party failed to provide any expert opinion that any symptom "was caused by exposure to mold").  Specifically, to succeed on her "strict liability" claim based on her allegation thar "toxic" mold led to health problems for Plaintiff and her family members, Plaintiff is required to prove that the "toxicant in question is capable of causing the injury complained of (general causation) and must further prove that the toxicant in fact did cause the injury in the present case (specific causation)."  *Young v. Burton*, 567 F. Supp. 2d 121, 138 (D.D.C. 2008).

Plaintiff has not offered evidence in support of either component of causation because she has failed to provide any expert testimony.  As to general causation, the question of whether the mold that was found is "toxic," and the question of whether the so-called "toxic" mold can cause the injuries that Plaintiff complains of requires scientific knowledge beyond knowledge of an average lay person.  *See Lasley v. Georgetown Univ.*, 688 A.2d 1381, 1385 (D.C.1997) (requiring expert medical testimony unless "the issue of causation can be resolved within the realm of ordinary human knowledge and experience").  Plaintiff has offered *no* medical expert to opine on whether toxic mold can cause the injuries that Plaintiff alleges—including "headaches, vomiting, bleeding, and chest pains during pregnancy with twins."  Pl.'s Counter-Stmt. ¶ 31.  Plaintiff has also failed to offer sufficient evidence as to specific causation, which would require her to demonstrate that the so-called "toxic" mold *did* cause the detrimental health issues she claims she and  her children suffered.  Again, Plaintiff did not timely disclose the identity of any medical expert (or otherwise timely comply with the requirements of Rule 26), and so she has been precluded from relying on expert testimony to demonstrate causation.  She has also indicated that no treating physician has agreed to serve as an expert to testify as to her or her children's purported symptoms.  *See* Pl.'s Opp'n to Def.'s Mot. to Strike at 7.

In sum, Plaintiff has offered no expert testimony in support of her claims that "toxic" mold was present at the Property.  And she has not offered any evidence of a causal connection between the mold and the injuries she claims that she and her children sustained.  Therefore, Plaintiff has failed to proffer evidence sufficient to demonstrate a genuine dispute of material fact as to the *cause* of the alleged injuries.  *See, e.g.*, *Scholl v. Camden Crown Valley*, 2017 W.L. 11635792, at *2 ("[S]ince there's no reasonable medical probability based on competent expert testimony that

[plaintiff] was harmed by toxic mold while living at the Premises, [defendant] is entitled to summary judgment as a matter of law.").

**B.** **Plaintiff Has Failed to Offer Evidence to Show a Genuine Dispute of Material Facts as to any "Breach" by NVR of the Purchase Agreement.**

As noted *supra* Section III(A), a plaintiff pursuing a breach of contract claim must prove, among other elements, "an obligation or duty arising out of the contract" and "a breach of that duty." *Tsintolas Realty*, 984 A.2d at 187. And, to survive a motion for summary judgment, the nonmovant must submit "competent evidence" setting forth "specific facts showing that there is a genuine issue for trial." *Id.* Plaintiff's Opposition relies on four provisions of the Purchase Agreement allegedly "breached" by NVR: paragraphs 1, 11(C), 15, 22. *See* Pl.'s Opp'n to Def.'s S.J. Mot. at 10–13. However, Plaintiff fails to provide competent evidence supporting any "breach" of any of the contractual provisions upon which she relies. As such, summary judgment in NVR's favor is appropriate.

Plaintiff first contends that NVR has breached Paragraph 1 of the Purchase Agreement, *see* Pl.'s Opp'n to Def.'s S.J. Mot. at 10, 13, which provides: "The Home will be constructed as shown on the construction drawings (or blueprints), the grading plan, floor plans and other plans related to the construction of the Home[,]" *id.* at 9–10, 12 . Plaintiff claims that "[f]acts supporting this claim include "photographs" taken by Plaintiff during a "visual inspection" and "the obvious defects which caused leaking and the development of toxic mold." *Id.* at 10 n.20 (citing Pl.'s Ex. TJ12, ECF No. 60-7 ); *id.* at 12 n.38.[7] Despite relying on "photographs," Plaintiff has submitted only one photograph, which lacks any context. It appears to show a small amount of water next to the corner of a metal structure. *See* Pl.'s Ex. TJ12. This photograph does not show, however,

---

[7] Although Plaintiff cites to Bates range "235 –258," the exhibit she has submitted to the Court consists of one photograph. *See* Pl.'s Ex. TJ12, ECF No. 60-7.

*how* NVR purportedly "breached" this provision of the contract or *how* the Home was "not" constructed in accordance with drawings or blueprints—she has not cited or provided any of these materials. Plaintiff also relies on the "written reports of inspection" prepared by Karma Home Design which purportedly demonstrate "design defects." *See* Pl.'s Opp'n to Def.'s S.J. Mot. at 10, 12–13. As the Court has previously addressed, this document does *not* support the sweeping claim for which Plaintiff cites it. *See* Mem. Op. at 13–14; *see supra* Section III(A)(1). And, it has been stricken from the record. *See* Mem. Op. at 21. Plaintiff cannot survive a motion for summary judgment by offering only conclusory assertions and claims of "obvious defects" without providing evidence to prove an element of her claim about which she would have the burden at trial.

Plaintiff next claims that NVR breached Paragraph 15 of the Purchase Agreement, Pl.'s Opp'n to Def.'s S.J. Mot. at 10, 13, which provides: "Under the Limited Warranty, [NVR is] responsible for repairing or replacing any damage caused by a defect in materials or workmanship in the original construction . . . [NVR is] not responsible for any Biological impurities that are not caused by defects in the original construction of [Plaintiff's] Home or which are caused or made worse through [Plaintiff's] actions or inactions," *id*. Plaintiff provides no argument or discussion of how NVR purportedly "breached" this provision—which appears to indicate only that certain of NVR's obligations arise from the Limited Warranty. *Id.* Instead, Plaintiff merely contends that "evidence supporting this claim" include "the inspection from Karma Home Design," as well as "the presence of toxic mold in the home, as identified by the findings of Boston Environmental and Contracting, and the leaking, dysfunctional plumbing system identified by Michael & Son plumbers." *Id. All* of these materials have been stricken from the record. She has, therefore, not

proffered any evidence to prove that there was a "defect in materials or workmanship in the original construction," *or* that NVR breached any obligation to fix it.

Plaintiff further claims that NVR breached Paragraph 11(c) of the Purchase Agreement, pursuant to which the parties agreed that "[Plaintiff is] purchasing a completed Home from [NVR] and [NVR is] not acting as a contractor for [NVR] in the construction of the Home.  Pl.'s Opp'n to Def.'s S.J. Mot. at 10, 13.  Plaintiff "contends that the home was not completed after settlement," and contends that receipts for service calls by NVR to make repairs and "emails with" NVR's contractor, Sunshine Cleaning & Restoration, as well as her "own notes" from "repeated services visits" support this purported "breach." *Id* at 10–11, 13.  Plaintiff has failed to produce any of her "notes" detailing these service visits.  And although her communications may demonstrate "repairs" after the settlement date, she fails to demonstrate how they establish that the home was not "completed" as of the settlement date.  Therefore, Plaintiff has not demonstrated a genuine dispute of material fact as to breach of this section.

Plaintiff similarly relies on "facts" relating to NVR's "numerous returns to the home to work on it after settlement," in support of her claim that NVR breached Paragraph 22, which provides that "TIME IS OF THE ESSENCE FOR THIS AGREEMENT. This means that the failure to do what is required within the timeframes specified in this Agreement, or, if no timeframe is given, within a reasonable period, is a default under the Agreement."  Pl.'s Opp'n to Def.'s S.J. Mot. at 11, 13.  Again, Plaintiff fails to explain how evidence of purported service calls by NVR and its contractors demonstrate that NVR "failed to do what is required" pursuant to the Purchase Agreement. *Id.*

In sum, Plaintiff's claims that NVR "breached" these provisions of the Purchase Agreement rest on conclusory assertions and lack evidentiary support—providing an additional basis for granting NVR summary judgment as to her breach of contract claim.

## C. **Plaintiff Has Failed to Offer Evidence to Show a Genuine Dispute of Material Facts as to any "Breach" of the Limited Warranty.**

Plaintiff's breach of warranty claim also fails for lack of competent evidence to demonstrate that NVR "breached" any portion of the Limited Warranty. As with her breach of contract claims, Plaintiff recites a number of provisions of the "Limited Warranty," claiming that NVR "breached" various obligations and the "facts" she claims support each assertion. *See* Pl.'s Opp'n to Def.'s S.J. Mot. at 13–16. Plaintiff's conclusory assertions fail to demonstrate any triable factual disputes that NVR "breached" any obligation under the Limited Warranty.

In support of most of her claims that NVR "breached" express warranties, Plaintiff relies *exclusively* on the so-called "reports" prepared by Michael & Son and Karma Home Design as evidence of NVR's "breach." *See* Pl.'s Opp'n to Def.'s S.J. Mot. at 14–15 (citing only Michael & Son Estimate in support of claim that NVR breached § 15.1(a) of Limited Warranty); *id.* at 15 (citing only Michael & Son Estimate in support of claim that NVR breached § 15.3(a) of Limited Warranty); *id.* (citing only Michael & Son and Karma Home Design Estimates in support of claim that NVR breached "One Year Limited Warranty on the Basic Home"); *id.* (citing only Michael & Son and Karma Home Design Estimates in support of claim that NVR breached "Two Year Limited Warranty Mechanical Systems"); *id.* at 15–16 (citing only Michael & Son and Karma Home Design Estimates in support of claim that NVR breached "Ten Year Limited Warranty Against Major Structural Defects"). As the Court has now addressed at length, these reports do *not* support the wide-reaching claims for which Plaintiff cites them; they *do not* "detail[ ] design defects" nor do they present the results of any "inspection," as Plaintiff claims. Pl.'s Opp'n to

Def.'s S.J. Mot. at 15–16.  They provide only estimates for the cost of "repairs"; they are *silent* as to the *cause* of any damage.  And, these "reports" have been stricken from the record.  *See* Order, ECF No. 68.  Plaintiff, therefore, has failed to produce *any* evidence in support of her claims that NVR has breached these provisions of the Limited Warranty.

Plaintiff has also failed to demonstrate a genuine dispute of material fact as to her remaining theories of NVR's "breach" of the limited warranty.  She claims, for example, that NVR breached Section 12.1(a), in which it warranted, "In preparing your home for occupancy, the sewers have been flushed and tested to work properly.  Water supply systems and fixtures have been pressure tested to eliminate leaks."  Pl.'s Opp'n to Def.'s S.J. Mot. at 14.  In support of this claim, she cites "photographs" (which is the same single photograph described *supra* Section III(B)) and her communications with NVR regarding repairs to the plumbing system.  *Id.* As with her breach of contract claim, her single photograph together with the fact of post-settlement service visits fail to demonstrate any triable issue of fact that NVR failed to "test" the water system in advance of the settlement date.

Plaintiff also relies on "services visits" by NVR in support of her claim that NVR breached its warranty that in the event of a "defect" for which "Builder is responsible," it will "repair, replace, or pay the reasonable cost of repairing or replacing the defective component."  Pl.'s Opp'n to Def.'s S.J. Mot. at 16.  However, the undisputed evidence on the record indicates that, after October 2019, Plaintiff did not allow NVR access to the Property to make recommended repairs.

Plaintiff further contends that NVR "breached" a provision of the Homeowners' Manual providing for a "New Home Orientation" for purchasers, during which "[a]ny items that are not up to industry standards of workmanship will be noted for correction."  Pl.'s Opp'n to Def.'s S.J. Mot. at 14.  Plaintiff offers as "evidence" in support of this claim a "Contract Checklist" and "the

fact that settlement on the home took place with no mention of defects." *Id.*  As NVR correctly notes, the Contract Checklist (Pl.'s Ex. TJ11, ECF No. 59-8) appears to have nothing to do with any "orientation" or related inspection.  *See* Def.'s S.J. Reply at 5–6.  And, Plaintiff has failed to offer any evidence supporting her allegation of  a "defect" present as of the settlement date.

Finally, Plaintiff cites *no* evidence on the record in support of her assertions that NVR breached two additional provisions of it Homeowners Manual, which was provided to Plaintiff (and contains the Limited Warranty): (1) "Any time that warranty service is performed during the Warranty Period, such service continues to be covered within the remaining original Warranty period; (2) "As your builder, we should only be contacted where the source of moisture is a direct result of a building defect or mechanical problem within the applicable warranty period.  Such notification must be given with 24 hours in order to minimize the possibility that the source of moisture will lead to mold development."  Pl.'s Opp'n to Def.'s S.J. Mot. at 14.  In addition to failing to point to *any* evidence, Plaintiff fails to explain how these provisions imposed any duty on NVR that could have possibly been "breached."

The Court concludes that Plaintiff's complete "failure of proof" concerning the "breach" element of her breach of warranty claim supplies an additional basis for the Court to grant summary judgment in NVR's favor.

**D.** **Plaintiff's Strict Liability and Breach of Contract Claims are Time-Barred by the Purchase Agreement.**

Summary judgment in NVR's favor is also appropriate as to Plaintiff's breach of contract and strict liability claims because they are time-barred by Paragraph 13 of the Purchase Agreement, which provides:

> ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, SETTLEMENT HEREUNDER, OR IMPROVEMENTS TO THE PROPERTY, *REGARDLESS OF LEGAL THEORY*, EXCEPT ANY CLAIMS UNDER THE

> LIMITED WARRANTY . . . SHALL BE SUBJECT TO A ONE (1)
> YEAR LIMITATION OF ACTION PERIOD AND BAR
> DATE. . . . THE ONE YEAR LIMITATION OF ACTION
> PERIOD FOR ALL SUCH CLAIMS SHALL BEGIN TO RUN ON
> THE SETTLEMENT DATE.  ALL APPLICATION OF THE SO-
> CALLED "DISCOVERY RULE" IS MUTUALLY WAIVED BY
> THE PARTIES.  BY EXECUTING THIS AGREEMENT, YOU
> ACKNOWLEDGE     YOUR     UNDERSTANDING     AND
> AGREEMENT TO THESE TERMS AND THAT THE SAID ONE
> (1) YEAR PERIOD IS COMPLETELY REASONABLE IN ALL
> RESPECTS.

Purchase Agreement ¶ 13.

NVR argues that Plaintiff's breach of contract and strict liability claims "arise out of and relate to" the Agreement because they depend on claimed "defects in the design or construction" of the Property.  Def.'s S.J. Mot. at 17–18.  Plaintiff does not dispute this point.  According to NVR, therefore, the limitations period for both claims began to run on the settlement date, October 18, 2016, and expired as of October 18, 2017.  *See id.* at 17.

Recognizing that District of Columbia law is "unresolved" as to whether "a contractual provision intended to waive the benefits of the discovery rule will be enforced" in the context of a residential construction contract, NVR further contends that *even if* the discovery rule was not waived (or could not be waived) by the parties, Plaintiff's breach of contract and strict liability claims would still be barred by the 1-year limitation period.  *See* Def.'s S.J. Mot. at 18 n.5 (citing *Jacobsen v. Block*, 744 A.2d 1028, 1032 (D.C. 2000), *abrg'd on other grounds*, *Mena v. Plymouth Rock Assur. Corp.*, 987 A.2d 458 n.27 (D.C. 2010)).[8]  The parties do not dispute that Plaintiff first discovered a "leak" in February 2017, which means any claims (other than those arising from the limited warranty) would have been time-barred by February 2018.  As Plaintiff did not file her

---

[8] *See, e.g.*, *Azoroh v. Automobile Ins. Co. of Hartford, CT*, 200 F. Supp. 3d 127, 131 (D.D.C. 2016) ("[A]lthough the District of Columbia has yet to explicitly rule on whether the discovery rule applies to contractual limitations provisions, other courts have held that the discovery rule does not apply to unambiguous contractual limitations provisions that clearly identify the time from which the limitations period begins to run.").

Complaint in this action until January 2020, NVR contends that her strict liability and breach of contract claims are barred by Paragraph 13. *See* Def.'s S.J. Mot. at 18.

Invoking recent Maryland caselaw, NVR contends that a "contractual provision that shortens a limitation period" is "enforceable if there is no statute to the contrary, the provision was not obtained by fraud, duress or misrepresentation, and the provision is reasonable." *See* Def.'s S.J. Mot. at 18–19 (citing *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 693–94 (2017)). The Court has not identified any District of Columbia legal authority addressing whether a similar contractual limitations period is enforceable in the context of a residential construction contract, although courts in this jurisdiction *do* regularly enforce one-year contractual limitations under D.C. law in other contexts. *See, e.g.*, *Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 2d 94, 99 (D.D.C. 2010) (enforcing one-year contractual provision contained in insurance policy); *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 57 (D.D.C. 2006) (same). Moreover, it is well-established that in the absence of "on point" District of Columbia common law, courts in this jurisdiction may "look to the law of Maryland for guidance" because the District "derives its common law from that state." *Conesco Indus., Ltd. v. Conforti & Eisele, Inc., D.C.*, 627 F.2d 312, 315–16 (D.C. Cir. 1980). Accordingly, the Court views the Maryland law cited by NVR as persuasive authority in providing the legal framework for analyzing the enforceability of a contractual limitations period.

NVR contends that Paragraph 13 is enforceable under the framework articulated in *Ceccone*, pointing to a recent decision by the U.S. District Court for the District of Maryland, which enforced a similar one-year contractual limitation period in a separate lawsuit against NVR. *See* Def.'s S.J. Mot. at 19–20 (citing *Daniels v. NVR, Inc.*, 56 F. Supp. 3d 737, 740, 743-44 (D. Md. 2014)). NVR further argues that there is no District of Columbia statute prohibiting the one-year

contractual limitations provision, that the one-year time period is reasonable, and that there is no evidence on the record showing that the Purchase Agreement was the product of fraud, misrepresentation, or duress.  Def.'s S.J. Mot. at 19.

Plaintiff does not directly address any of these arguments; she responds only that the Purchase Agreement amounts to an "unconscionable adhesion contract," because it was "on a printed standardized form," and because she was in an inferior bargaining position and would not have "knowingly and willingly" surrendered her "right to seek redress."  Pl.'s Opp'n to Def.'s S.J. Mot. at 17.  Plaintiff points to *nothing* on the record in support of her claim that the contractual limitation term is "unconscionable" and/or that the Purchase Agreement is an "adhesion contract." Instead, she merely relies only on legal authority for the general proposition that "terms in contracts of adhesion are subject to a reasonableness standard" and that "unconscionable" contract terms are not enforceable.  *Id.*  But Plaintiff fails to recognize that *even if* "a contract is on a printed form and offered on a 'take it or leave it' basis," (as she claims is true of the Purchase Agreement, *id.*), " those facts alone do not cause it to be an adhesion contract," but rather "[t]here must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation and that the services could not be obtained elsewhere."  *Moore v. Waller*, 930 A.2d 176, 182 (D.C. 2007).  Plaintiff has made not such showing; rather the evidence on the record plainly establishes that she reviewed the terms of the Purchase Agreement with the guidance of a real estate agent and agreed to them.  *See supra* Section I(B)(1).  She offers no evidence, for example, showing that she objected to any of the Agreement's terms or "attempted to bargain for different terms[,] [n]or has [s]he shown that the contract involved a necessary service." *Bradley v. Nat'l Collegiate Athletic Ass'n*, 464 F. Supp. 3d 273, 293 (citing *Moore*, 930 A.2d at 182).

Moreover, Plaintiff fails to point to *any* evidence on the record demonstrating that the Purchase Agreement's limitation term is "unconscionable."  Pl.'s Opp'n to Def.'s S.J. Mot. at 17. "The party invoking unconscionability as a defense to enforcement of a contractual term must prove both" *both*  a "lack of meaningful choice and terms unreasonably favorable to the other party[.]"[9] *Kenyon Ltd. P'ship v. 1372 Kenyon St. Nw. Tenants' Ass'n*, 979 A.2d 1176, 1186 (D.C. 2009) (quoting *Urban Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983)).

Plaintiff's Opposition cites *nothing* on the record of this case supporting her conclusory assertions that the contractual time limitations is "unconscionable."  Nor does she offer an argument in response to NVR's argument that the one-year limitations period contained in the Purchase Agreement is both reasonable and enforceable.  Accordingly, the Court shall enforce the limitation term in the Purchase Agreement as written, which bars Plaintiff's breach of contract and strict liability claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that NVR is entitled to summary judgment as to each of Plaintiff's remaining claims (breach of contract, breach of express warranty, and strict liability).  Accordingly, the Court shall grant Defendant's Motion for Summary Judgment and shall dismiss this case.  An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　United States District Judge

Date: March 29, 2022

---

[9] Under D.C. law, in an "egregious situation," proof of "one or the other" may suffice. *Kenyon Ltd. P'ship*, 979 A.2d at 1186 (quoting *Branham*, 464 A.2d at 99).  Plaintiff offers no argument that such an "egregious matter" is present here, and nothing on the present record would support that claim.  And, explained by another court in this jurisdiction, "there do not appear to be any reported [District of Columbia] cases finding such an 'egregious' scenario." *Ruiz v. Millennium Square Residential Ass'n*, 156 F. Supp. 3d 176, 180 (D.D.C. 2016).